**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 5:26-CR-00002-SCM-MAS-2** |
| ) | |
| **AARON DANIEL WHITTAMORE,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

<u>**MEMORANDUM OPINION & ORDER**</u>

It is an age-old story that courts are frequently faced with: "I've turned over a new leaf. I promise I'll be good." This leaves courts questioning when it can believe such sentiments, what exactly constitutes change, and when does such change overcome a person's history. Maintaining sobriety while simultaneously being involved in a drug trafficking scheme? Finally following state bond conditions without issue, after the issuance of multiple bench warrants less than six years ago? Retaining employment and family contact while allowing assisting your girlfriend to traffic drugs in your apartment? This Court must resolve these contradictory facts.

For the reasons that follow, the Court finds that there are no conditions the Court can impose that will assure Whittamore's appearance in this case. The Court will therefore GRANT the United States' motion for pretrial detention.

## I.    ANALYSIS

Whittamore is charged with knowingly and intentionally possessing, with the intent to distribute, 50 grams or more of methamphetamine (actual) and conspiracy of the same, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  [DE 1].  At the initial appearance, the United States orally moved for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B) and (C).  [DE 15].  The Court conducted a detention hearing on January 30, 2026.

### A.    LEGAL STANDARD FOR DETENTION UNDER THE BAIL REFORM ACT

The Court afforded both sides all procedural rights outlined in the Bail Reform Act. Given the nature of the charges, a detention presumption arises under the BRA as to both the nonappearance and danger risks.  18 U.S.C. § 3142(e)(3)(A).  The presumption imposes upon the defendant a "burden of production" to introduce "at least some evidence" that he is neither at risk of nonappearance nor endangering the community.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  This burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Id.* An unrebutted presumption requires detention.  Even if the defendant fails to rebut the presumption, the presumption remains a factor in determining detention.  *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

If a defendant rebuts the presumption of detention, the burden shifts back to the United States to prove that detention is nevertheless warranted.  Detention premised on nonappearance must rest on facts supported by a preponderance of the

evidence.  *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006).  Detention based on danger, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure the safety of the community.  18 U.S.C. § 3142(f).  Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with any imposed conditions.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as a critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f).  The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  However, the nature and quality of proof impacts its probative value and weight in the detention calculus.  The § 3142(g) factors guide the analysis.

**B.    WHITTAMORE REBUTTED THE PRESUMPTION**

To rebut the presumption as to flight or nonappearance and danger, Whittamore relied predominantly on proffer and the testimony of both his mother and father.  Whittmore clearly has strong community and family ties and a relatively limited criminal history, especially where similar offenses are concerned.  Both his father and mother testified that they would consistently check-in on Whittamore and report any violations of release conditions to the United States Probation Office.

Additionally, Whittamore has steady employment and will continue to have such employment if released. Whittamore proffered that he is no longer using controlled substances and produced a negative drug test. Finally, Whittamore played a relatively minimal role in the alleged drug trafficking that occurred in this case. On balance, the Court finds that these considerations are sufficient to meet Whittamore's low production burden, overcoming the detention presumption as to danger and nonappearance or flight. *See Stone*, 608 F.3d at 945; *see also United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring "probative, credible evidence to rebut the presumption"). However, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d Cir. 1986)). As such, the presumption will remain a pro-detention consideration in both the nonappearance and danger contexts. *Stone*, 608 F.3d at 945.

## C.  WHITTAMORE'S DANGER TO THE COMMUNITY

In analyzing Whittamore's potential for danger to the community, the Court considers his history and characteristics, the nature and circumstances of the offense charged, the weight of the evidence against Whittamore, and the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). The Court finds that the United States has failed

to prove by clear and convincing evidence that Whittamore poses a danger to the community under the BRA framework.

1.  **Whittamore's History and Characteristics**

The Court must consider many aspects of Whittamore's background in making the decision to release or detain him. Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Whittamore was born in Richmond, Kentucky, and has spent much of his life in Madison County, Kentucky. [PSR at 1–2]. He reports a strong relationship with both parents, which was exemplified by their extensive and heartfelt testimony in his support at the detention hearing. Both parents reside in Richmond Kentucky, with Whittamore's father, William, residing around three miles from Whittamore's current residence and his mother, Wilma Robinson, residing around half a mile from Whittamore's residence. Whittamore has two siblings, Aubrey and Alan Whittamore. He originally reported that he maintains little contact with Aubrey and none with Alan; however, Whittamore confirmed by proffer at the detention hearing that he did in fact have consistent contact with Alan.[1]  Whittamore also has an 11-year-old

---

[1] Whittamore's counsel explained that Whittamore was concerned that Alan's proximity to both he and Burns may implicate him in the current case; therefore, he

daughter, who resides with her mother in Berea, Kentucky. Prior to his arrest, Whittamore was residing at an apartment on Kristin Drive in Richmond, Kentucky, with his co-defendant and girlfriend, Destiny Burns, and his brother, Alan Whittamore. If released, Whittamore will return to live with his brother at his Kristen Drive apartment. Ms. Burns, however, will no longer reside at that address, as she will be detained pending trial. [DE 24].

Whittamore is 32 years old. He reports attending Madison Southern High School before withdrawing in the ninth grade. [PSR at 2]. Prior to his arrest, Whittamore was employed as a painter at Shades of Color and may return to this position if he is released. He does not report any significant physical or mental health issues. The evidence presented at the detention hearing indicates that Whittamore has a history of substance use disorder but has been sober since his release from state custody in October 2024. This proffer is corroborated by a negative drug test result following his initial appearance. [PSR at 3].

Although Whittamore's criminal history is not extraordinarily substantial, it does present some relatively concerning aspects. To his credit, Whittamore does not have an extensive drug trafficking history. On the contrary, Whittamore's only previous drug charge was in 2014, at the young age of 21, for possession of marijuana. [PSR at 4]. Whittamore did fail to appear for an arraignment, resulting in a bench warrant and a Contempt of Court charge. In 2016, the PSR indicates that

---

lied to the probation officer. While the Court agrees with the United States that this was certainly an odd choice, it does not substantially impact the Court's analysis.

Whittamore received an additional Contempt of Court charge, although the details and disposition are unknown to this Court. In both 2017 and 2019, Whittamore earned separate charges for Assault in the Fourth Degree, both relating to domestic disputes, although the 2019 charge was eventually dismissed. [PSR at 4–5].

Likely the most important event to consider in the danger analysis is Whittamore's 2020 arrest and conviction for Fleeing or Evading Police in the First Degree, Wanton Endangerment in the First Degree (Police Officer), Theft of Identity of Another Without Consent, and Operating on a Suspended/Revoked Operator's License. [PSR at 5–6]. In short, after being approached by law enforcement officers about an open warrant for failure to pay child support, Whittamore told officers that the warrant was for his brother. He then proceeded to pick up his two-year-old daughter in a supposed move to prevent the officer from taking him into custody. Eventually, Whittamore locked himself and his daughter in his car and drove away, beginning a brief car chase that was terminated due to the presence of a young child in the vehicle. Officers later apprehended Whittamore. Throughout the pendency of that case, three bench warrants were issued for Whittamore's failure to appear for various court appointments and a probation violation.[2] Whittamore's probation violation in that case was for failure to report to treatment, testing positive for methamphetamine and marijuana, and failure to report to the probation office as directed.

---

[2] The Court will delve further into the details surrounding each bench warrant in the Nonappearance section of this opinion.

As a result of the 2020 arrest, Whittamore spent some time in state custody and was released in October 2024.  While in state custody, he completed several self-betterment programs, including Thinking for the Good, anger management, and trauma classes.  He also served on an outside facility work crew.  Testimony from the detention hearing indicates that Whittamore has been sober since his release.  He proffers that he has developed several hobbies including painting, reading, spending time with his daughter, and attending church.  Further, he was on bond for the related state offenses and living in the Kristen Drive apartment from September 2025 until his arrest on the present federal offense in January 2026, seemingly without any issue, further offense, or violation of conditions.

In sum, Whittamore has a close balance of positive and negative considerations under this factor.  Weighing against release, Whittamore does have a minimal history of violent conduct, a more significant history of failing to appear, and one prior probation violation for drug use.  On the other hand, he has no prior similar charge or history of exceedingly violent behavior (beyond two domestic disputes occurring over seven years ago), he has an incredibly supportive family, many ties to this district, consistent employment that allows him close proximity to his father—a clear positive influence in his life, and, although he has a history of substance abuse, Whittamore has demonstrated his current commitment to sobriety.  All in all, this factor slightly favors release.

## 2.    **The Nature and Circumstances of the Offense Charged**

The next BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]"

18 U.S.C. § 3142(g)(1).  At the detention hearing, the United States offered proffer of Whittamore's alleged criminal conduct.[3]

According to the government, Whittamore's conduct underlying the Indictment is limited to one specific occasion—a traffic stop occurring on August 22, 2025.  Prior to the stop, government agents were notified that Burns was planning to replenish her methamphetamine supply at a McDonald's in Madison County, Kentucky.  On August 22, law enforcement officers tracked Burns's vehicle to McDonald's and observed that it was empty.  Later, a different vehicle arrived, and Whittamore exited the vehicle carrying a duffel bag, which he placed in Burns's vehicle.  Burns then exited the unidentified vehicle and entered her vehicle.  Subsequently, a traffic stop of Burns's vehicle was initiated, which resulted in the search of the vehicle and the discovery of approximately 2,317 grams of methamphetamine in the duffel bag that Whittamore had previously carried to the vehicle.[4]

Notably, government agents conducted extensive investigation of Burns prior to her arrest following the August traffic stop.  This investigation included three separate controlled transactions between Burns and a confidential informant, which

---

[3] The United States previously offered the testimony of Task Force Officer Scott McIntosh of the Drug Enforcement Administration at co-defendant Destiny Burns's detention hearing on January 29, 2026.  [DE 24].  TFO McIntosh's testimony mainly centered on the alleged criminal conduct underlying the indictment of both Burns and Whittamore.  At Whittamore's detention hearing, the United States proceeded by summarily recounting this testimony through proffer of fact.

[4] The DA lab later determined that this was the equivalent of over two kilograms of pure methamphetamine.

occurred on June 9, July 9, and July 24, 2025.[5]  Although two of the transactions occurred at the Kristen Drive apartment, Whittamore was not directly involved in any of the three transactions.  In fact, he was only present for the July 24 transaction, with law enforcement officers reporting that he observed from the background.

Although the nature of the offense—a presumption drug trafficking case—favors Whittamore's detention, his alleged involvement is relatively minimal.  The context provided by the government indicates that Whittamore was only present for two of the transactions and his alleged involvement on August 22, 2025, only extended to carrying a duffel bag for his girlfriend, which could be perceived as criminal or merely chivalrous.  Indeed, the BRA manifestly signals Congress's belief in the inherent, exceptional dangerousness of the at-issue offense.  And as previously discussed, the detention presumption stemming from it "does not vanish simply because a defendant comes forward with evidence to rebut it.  Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'"  *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d Cir. 1986)).  Drug trafficking is, in and of itself, an offense that poses a serious danger to the community.  *United States v. Stone*, 608 F.3d 939, 955 n.6 (6th Cir. 2010).  Thus, the presumption persists as a pro-detention consideration and, overall, this factor must favor detention.

---

[5] Burns sold the confidential informant 28 grams, 56 grams, and 56 grams of methamphetamine, respectively.

### 3.    <u>The Weight of the Evidence of Dangerousness</u>

In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence.  18 U.S.C. § 3142(g).  "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense."  *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948).

This factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent behavior.  As noted above, Whittamore faces charges of conspiracy to distribute and possession with the intent to distribute substantial quantities of methamphetamine on August 22, 2025.  The evidence discovered in the state case included drugs and cash in a quantity that suggests trafficking.  However, as discussed above, the proffer put forth by the government largely implies that Burns, not Whittamore, was in the proverbial "driver's seat" of the alleged criminal conduct.  Resultingly, this limits the Court's concern for Whittamore's propensity for dangerousness by continued drug trafficking if released.

Of note, the United States contends that, following their arrest, Burns and Whittamore conducted several jail calls that indicated that Burns was planning to continue trafficking drugs to obtain the funds required for Whittamore's release.[6]  On

---

[6] Burns was released on bond following the arrest.  Whittamore was not.

August 30, officers observed a female individual enter the Kristen Drive apartment, exit, meet with an unknown individual in the parking lot, return to the apartment, and then leave. During a later traffic stop of the female's vehicle, police discovered approximately 150 grams of methamphetamine, which the female indicated that she had purchased from Burns to gather funds for Whittamore's release. Burns later showed an envelope of money to Whittamore on jail calls and eventually gave the money to his mother to secure his release.[7] Although the government is unable to produce evidence that Burns explicitly informed Whittamore that the funds were drug proceeds, it did confirm that the two used encrypted communications on jail calls which officers interpreted as Burns "indirectly speaking about drug transactions." At one point, Burns made the comment that an individual was on her way to the Kristen Drive residence. The individual was known to Whittamore to purchase narcotics. Undeniably, this story indicates Burns's willingness to continue dangerous criminal activity, and the possibility that Whittamore knew about, or even encouraged it. What it does not indicate, however, is that Whittamore himself is any more dangerous as a result. In fact, the entire anecdote supports the idea that Burns was primarily responsible for the drug trafficking operations, especially since she was clearly able to facilitate them without any help from Whittamore.

Indeed, drug trafficking is an inherently dangerous activity, however, the United States has not provided substantial evidence that Whittamore was

---

[7] This money was seized as suspected drug proceeds and is now included in the Indictment forfeiture allegations.

significantly involved in the drug trafficking operation beyond being present at two transactions and carrying a duffel bag containing drugs. However, evidence of even tangential involvement in such an operation combined with the mere fact that at least some of the operation was based in the Kristen Drive apartment—where only Whittamore's name was on the lease—along with Whittamore's past criminal history, however *de minimis*, narrowly pushes this factor towards detention. When coupled with the lengthy information about Whittamore's history and characteristics, the Court concludes the factor favors release.

### 4.    <u>The Nature and Seriousness of Danger Posed by Release</u>

For the fourth and final factor under the BRA, the Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In cases involving drug trafficking, courts have repeatedly recognized the grave threat such conduct poses to the community. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (noting that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

Whittamore's case, however, presents a different dilemma. The Court has already addressed the evidence presented at the detention hearing of Whittamore's less than substantial involvement in the drug trafficking operation. Although there is always a risk that a defendant will continue to engage in drug trafficking on

release, the Court believes that this is extremely unlikely here, especially given the absence of drug trafficking charges or convictions in Whittamore's criminal history. In fact, the available information allows the Court to logically infer that Whittamore's involvement in drug trafficking operations only began when Burns entered the picture and, as such, will likely cease when she exits. Luckily for Whittamore, Burns will be detained pending trial and, thus, has now exited the picture. Although the Court has some concerns about Whittamore returning to the Kristen Drive apartment, where drug trafficking operations were formerly occurring, these can be alleviated with the imposition of appropriate release conditions.

This leaves only the concerns which arise with Whittamore's history of failing to comply with court-imposed conditions. Whittamore contends that these failures largely occurred when he was consistently under the influence of drugs. He now proffers that he has been sober since October 2024, offering a recent negative drug test to corroborate. Further, Whittamore offers the testimony of both of his parents, that they will closely monitor his activities and turn him in if the need arises. This support, along with his current employment and sobriety, was missing throughout his past involvement with the Commonwealth's court system. Whittamore's argument to this point is further supported by the fact that he was released on state bond from September 2025 to January 2026, without issue. After hearing the testimony at the detention hearing, this Court is sufficiently convinced that the concerns that arise with Whittamore's prior failures are mitigated by these new considerations. The Court believes that it can craft conditions to adequately

minimize the mild danger posed by Whittamore's release, especially if Burns is no longer present in his home.[8]

In sum, the United States successfully presented some evidence of Whittamore's dangerousness but did not present *clear and convincing evidence* that Whittamore poses a danger to another person or to the community as required by the BRA. Although he has a minimal history of past dangerousness and reduced involvement in the instant offense, this does not satisfy the "high degree of certainty [that] lies at the core of this test." *United States v. Catala Fonfrias*, 612 F. Supp. 999, 1001 (D.P.R. 1985) (discussing the "clear and convincing" evidence standard required for presentencing release pursuant to 18 U.S.C. § 3143). While the Court agrees that there is some evidence that Whittamore may present a danger to the community, it simply is not sufficient to require detention under the danger consideration of the BRA.

## D.   WHITTAMORE'S RISK OF NONAPPEARANCE

Although Whittamore rebutted the presumption, it remains a pro-detention consideration in both the nonappearance and danger contexts. *Stone*, 608 F.3d 945. Collectively, the history and characteristics of Whittamore, the nature and circumstances of the instant offense, and the weight of the risk of nonappearance evidence drive the detention analysis.[9]

---

[8] The specific conditions considered are discussed in further detail in the nonappearance section of this opinion.

[9] The § 3142(g)(4) considerations do not bear on flight or nonappearance risk in this case. The Court considers that factor briefly in relation to its danger analysis, *supra*.

To begin, the Court must again consider Whittamore's history and characteristics. 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's employment, history relating to drug or alcohol abuse, criminal history, past conduct, and record concerning appearance at proceedings). The Court will begin with those considerations which are not favorable for Whittamore's release.

As previously discussed, the PSR indicates two Contempt of Court charges (2014 and 2016). [PSR at 4]. The 2016 charge was the result of Whittamore's failure to appear for an arraignment. Largely, the Court is willing to discount these charges due to Whittamore's young age at the time of the offenses (21 and 23, respectively). The main concerns in this area relate to the 2020 Fleeing and Evading case. At base, the charges at issue are largely concerning. Whittamore's acts in fleeing from the police, and apparent disregard for the potential risks to his young daughter, demonstrate a substantial propensity for flight. Additionally, Whittamore was found guilty of theft of the identity of another without consent. [PSR at 5]. The PSR explains that Whittamore gave the officer his brother's name and social security number instead of his own. At the very least, Whittamore's apparent willingness to use the identity of another does not bode well for his release argument. *See United States v. Aleman-Duarte*, No. 3:19-CR-149, 2020 U.S. Dist. LEXIS 6872, at *11 (E.D. Tenn. Jan. 15, 2020) (concluding that the "Defendant's use of [an] alias reveals that he is a serious flight risk") (collecting supportive cases).

Turning to the bench warrants issued throughout the pendency of the 2020 case, the Court has significant concerns. The first bench warrant was issued on April

15, 2021, due to Whittamore's failure to appear for a pretrial conference. [PSR at 6]. The PSR indicates that the warrant may have been recalled and the conference continued. A second bench warrant was issued on October 29, 2021, due to Whittamore's failure to appear for sentencing. The bench warrant was not served until February 21, 2023, at which point Whittamore remained in custody until his sentencing. The final bench warrant was issued on May 31, 2023, for a probation violation. As explained above, Whittamore failed to report to treatment, tested positive for methamphetamine and marijuana, and then failed to report to the probation office, as directed, following his positive test. The warrant was finally served on January 22, 2024. The most concerning aspect of the latter two warrants is the time it took for each of them to be served on Whittamore— nearly four and nine months, respectively. Indeed, such an extensive interval may merely be the result of a busy local law enforcement office that takes its time in serving bench warrants. But, at the very least, it necessarily indicates Whittamore's disregard for court authority and a concerning propensity to disappear for an extended period of time, if the opportunity should arise. Further, at his detention hearing, Whittamore was unable to provide an explanation for each of these acts; however, he did advise that he was under the influence of drugs at that time and is now sober. Indeed, the Court may consider the arguments that Whittamore was under the influence of controlled substances, quite young at the time (only 26 to 28 years old), and has turned over a new leaf since his release from state custody, but the fact remains: Multiple warrants for failure to appear are aggravating when considering a defendant's risk of flight or

nonappearance. *See United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding that "multiple failures to appear" were aggravating); *United States v. Gumora*, No. 20-CR-144, 2020 WL 1862361, at *7 (S.D.N.Y. Apr. 14, 2020) (finding that "numerous notations where warrants were issued for [ ] failure to appear" suggested nonappearance risk). And Whittamore has four.

Turning to the favorable considerations, Whittamore does not have substantial resources to abscond, nor does he seem to have the extensive contacts necessary for such an event. He has strong family relationships in Madison County, Kentucky, including his mother, father, brother, and young daughter. Additionally, his girlfriend, Destiny Burns, will remain in custody pending trial. Each of these facts mitigates Whittamore's risk of flight but do not substantially impact his nonappearance risk.

Whittamore has sufficiently persuaded this Court of his commitment to sobriety since October 2024. In the unlikely and unfortunate event that he falters, the Court is also confident in the ability of Whittamore's parents to determine his sobriety by his behavior and their willingness to inform the USPO of any drug use or activity. And, as previously discussed, Whittamore is able to return to his job at Shades of Color if he is released. Of course, employment reduces the risk of nonappearance or flight. *See United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's unemployment favors detention). Whittamore's particular offer of employment also reinforces his family connections (he works alongside his father, who picks him up each morning

for work) and his sobriety, which in turn reduces the risk of flight or nonappearance. Whittamore and his counsel seem to champion Whittamore's sobriety as the missing puzzle piece. And, while this may certainly be the case, the Court must also consider that Whittamore was supposedly sober when he committed the actions underlying the instant Indictment.

Perhaps most importantly, Whittamore was released from state custody on bond on September 26, 2025, and remained at the Kristen Drive apartment until his arrest in this case in January 2026. Whittamore proffers that he has followed all conditions of his release. While this fact does favor release, it is important for this Court to note that the record does not indicate that Whittamore has had any opportunities to fail to appear in the related state case. Although Whittamore certainly had the opportunity to flee during that four-month period and did not, this fact does not do much to overcome the ultimate issue here: his risk of nonappearance. All in all, although this factor presents what is admittedly a close call, it must favor detention.

The nature and circumstances of the charges in this case indicate some foundational nonappearance risk. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee (citing *Stone*, 608 F.3d at 947 n.6)). Also, Whittamore's possible prison sentence, a mandatory 10 years to life, is certainly long enough to encourage nonappearance or flight on some level. *See*

*United States v. Tawfik*, No. 17-CR-20183-2, 2017 WL 1457494, at *6 (E.D. Mich. Apr. 25, 2017) (considering mandatory prison sentences of 15 years to life as a factor that "weighs heavily in favor of detention"). On balance, this factor weighs in favor of detention.

As with the danger analysis, the weight of the evidence of nonappearance similarly encapsulates the above analyses of Whittamore's history and characteristics and the nature and circumstances of the offense. 18 U.S.C §§ 3142(g)(2)–(3); *see also United States v. Sykes*, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *Stone*, 608 F.3d at 948) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). In essence, the Court must consider the facts of the crime alleged as well as evidence that the defendant has had flight or nonappearance issues in the past. Although the facts of the crime do not show any indication that Whittamore attempted to flee at the time of his alleged actions, as the Court has already explored, his court history certainly establishes a pattern of nonappearance. Thus, this factor must weigh, however slightly, in favor of detention.

Consequently, there is substantial evidence that Whittamore poses a nonappearance risk, and all three BRA factors weigh in favor of detention in this case. Nor do the mitigating aspects of Whittamore's characteristics or the availability of home detention and GPS monitoring conditions assuage the relevant concerns. Although the Court recognizes the benefit in the fact that Whittamore has a residence

to return to (where he did not *personally* engage in criminal activity), consistent employment, incredible parents who are clearly willing to do anything to help their son, and is now sober, these facts cannot overcome the most concerning parts of Whittamore's criminal history: his history of flight and nonappearance.  These indicators have occurred too frequently and too recently for the Court to ignore.  It is worth noting that had there been more time since Whittamore's prior failures to appear, or even a more recent history of appearance, the Court would be more likely to land on release.  However, there is not enough factual or legal support to demonstrate that the risk of nonappearance posed by Whittamore's history has been sufficiently abated. While there are conditions that may mitigate this risk on some level, they cannot be enough to ensure Whittamore's appearance.  Furthermore, though the Court appreciates the willingness of Whittamore's parents to assist in monitoring him and credits this intent as genuine, the practicality and effectiveness of this oversight mechanism is questionable, particularly considering that Whittamore does not intend to live with either of his parents if released.  Finally, neither the availability of drug testing nor Whittamore's incentive to comply with release terms will be sufficient to assure his appearance.  The record confirms that Whittamore has not been deterred by court-imposed conditions in the past, nor has his recent sobriety prevented him from allegedly committing criminal acts, and the Court is not persuaded that drug testing would provide adequate deterrence in this instance.

Accordingly, the Court finds that the United States has shown by a preponderance of the evidence that no conditions can reasonably assure Whittamore's appearance in this case.  Detention on this basis is appropriate under the BRA.

## II.    <u>CONCLUSION</u>

For the above-stated reasons, the Court finds the United States failed to prove by clear and convincing evidence that Whittamore is an irremediable danger to the community but proved by a preponderance of the evidence that he poses a risk of nonappearance and the Bail Reform Act mandates detention.

The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure that Whittamore will appear in this case.  Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Whittamore.

Signed this the 5th of February, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY